UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOMINIQUE T.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

**23-CV-569-LJV**
**DECISION & ORDER**

On June 21, 2023, the plaintiff, Jominique T. ("Jominique"), brought this action under the Social Security Act ("the Act"). Docket Item 1. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled.[2] *Id.* On September 15, 2023, Jominique moved for judgment on the pleadings, Docket Item 6; on November 15, 2023, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 12; and on November 29, 2023, Jominique replied, Docket Item 13.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Jominique applied for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). One category of persons eligible for DIB includes any adult with a disability who, based on her quarters of qualifying work, meets the Act's insured-status requirements. *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989). SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court grants Jominique's motion in part and denies it in part and denies the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I.   THE ALJ'S DECISION

On August 15, 2022, the ALJ found that Jominique had not been under a disability since December 31, 2019, her alleged onset date. *See* Docket Item 5 at 21–22.  The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a).  *See id.*

At step one, the ALJ found that Jominique had not engaged in substantial gainful activity since her alleged onset date.  *Id.* at 22.  At step two, the ALJ found that Jominique suffered from one severe, medically determinable impairment: seizure disorder.  *Id.*

At step three, the ALJ found that Jominique's severe, medically determinable impairment did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See id.* at 23.  More specifically, the ALJ found that Jominique's impairment did not meet or medically equal listing 11.02 (epilepsy).  *Id*.

3

The ALJ then found that Jominique had the residual functional capacity ("RFC")[4] to "perform a full range of work at all exertional levels" except that:

> [Jominique] cannot work at unprotected heights or around dangerous moving machinery, tools[,] or chemicals; she cannot work with anything inherently sharp such as needles or exposed knives; she cannot operate motor vehicles of any kind; and she cannot work in environments that are not controlled for temperature, humidity, dusts, fumes[,] and gases.

*Id*.

At step four, the ALJ found that Jominique no longer could perform any past relevant work. *Id.* at 26. But given Jominique's age, education, and RFC, the ALJ found at step five that Jominique could perform substantial gainful activity as a routing clerk or price marker. *Id.* at 26–27; *see Dictionary of Occupational Titles* 222.687-022, 1991 WL 672133 (Jan. 1, 2016); *id.* at 209.587-034, 1991 WL 671802 (Jan. 1, 2016). The ALJ therefore found that Jominique had not been under a disability from her alleged onset date through the date of his decision. *See* Docket Item 5 at 27.

## II.   ALLEGATIONS

Jominique argues that the ALJ's RFC determination was not supported by substantial evidence. Docket Item 6-1 at 7–10. More specifically, Jominique argues that absent any functional medical opinion evidence, the ALJ impermissibly crafted the RFC based on his own lay judgment. *Id.* at 7. This Court agrees that the ALJ erred

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

and, because that error was to Jominique's prejudice, remands the matter to the Commissioner.

## III.   ANALYSIS

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). That does not mean that an RFC needs to "perfectly correspond with any of the opinions of medical sources cited in [an ALJ's] decision," *Matta*, 508 F. App'x at 56, or even be based on opinion evidence, *see Rubin v. Martin O'Malley, Comm'r of Soc. Sec.*, 116 F.4th 145, 155 (2d Cir. 2024). But when an RFC is crafted without the benefit of a medical opinion, "the RFC assessment will be sufficient only when the record is clear and contains some useful assessment of the claimant's limitations from a medical source." *Richardson v. Comm'r of Soc. Sec.*, 339 F. Supp. 3d 107, 117 (W.D.N.Y. 2018).

As the ALJ noted, Jominique "alleges disability based primarily on epilepsy." Docket Item 5 at 24. At the January 2022 hearing, Jominique stated that she experiences—without warning—facial seizures lasting up to an hour, accompanied by pain, blurred vision, and an inability to focus. *See id.* at 42–44. Jominique also reported experiencing grand mal seizures triggered by stress and physical activity. *Id.* at 44. But the ALJ concluded that Jominique's description of the "intensity, persistence[,] and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 24.

In reaching that conclusion, the ALJ reviewed various records of emergency medical treatment. For example, the ALJ considered a July 10, 2019, visit to the Buffalo

General Hospital Emergency Department at which Jominique reported experiencing breakthrough seizures.  *Id.* (citing *id.* at 585).  The ALJ noted normal test results and that Jominique was "discharged home independently and able to walk."  *Id.* (citing *id.* at 614, 624).  Other treatment notes from Buffalo General Hospital included similar findings.  *See, e.g.*, *id.* ("On October 28, 2020, [Jominique] presented . . . with reports of multiple seizures . . . [She] was discharged home and able to walk."); *id.* at 25 ("On July 16, 2021, [Jominique] presented . . . with reports of a breakthrough seizure . . . On examination, [she] was well appearing and neurologically intact.").

      The ALJ also considered treatment notes of Lixin Zhang, M.D., and Marc Frost, M.D., consultative neurologists.  *Id.* at 24–25.  On January 11, 2018, Dr. Zhang noted largely normal neurological examination findings*, id.* at 456–58, and EEG testing ordered at that visit returned normal results as well.  *Id.* at 846.  Nevertheless, Dr. Zhang diagnosed Jominique with "partial epilepsy with impairment of consciousness."  *Id.* at 456–58.  Dr. Frost's examination notes of July 26, 2021, likewise included ordinary neurological findings.  *Id.* at 833–39.  But like Dr. Zhang, Dr. Frost diagnosed Jominique with "partial epilepsy with impairment of consciousness."  *Id.* at 837.

      In other words, while both physicians performed neurological examinations that yielded normal results, both diagnosed epilepsy—that is, "recurrent and unprovoked seizures."  20 C.F.R., Pt. 404, Subpt. P, App. 1.  And those records say nothing about how intense or limiting those recurrent and unprovoked seizures were other than that they sometimes "impair[] consciousness."  Docket Item 5 at 457, 837.  So those records could not have been the basis for the ALJ's conclusion that Jominique's description of

the "intensity, persistence[,] and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." *See id.* at 24.

Nor do the emergency room records provide any link between the medical evaluations and the ALJ's finding that Jominique overstated her symptoms. Again, the fact that she had normal neurological findings and was "discharged home and able to walk," *see id.* at 24–25 (citing *id.* at 614, 624), does not mean that she did not have seizures or that the seizures were milder than Jominique described, *id.* at 24.

What is more, those neurological consultations and emergency room records marked the extent of the medical evidence in the record. As the ALJ acknowledged, "[t]he record contain[ed] no medical opinion evidence regarding [Jominique's] capacity to perform work related activities." *Id.* at 25. So as Jominique argues, *see* Docket Item 6-1 at 7, the ALJ must have crafted the RFC based on his own lay judgment when he found Jominique capable of performing "a full range of work at all exertional levels," Docket Item 5 at 23.

The Commissioner argues that "the record contained sufficient medical and nonmedical evidence . . . for the ALJ to make an informed decision." Docket Item 12-1 at 17–18. And to be sure, if Jominique had only minor impairments, the ALJ permissibly could have "render[ed] a common[]sense judgment about [her] functional capacity even without a physician's assessment." *Perkins v. Berryhill*, 2021 WL 3372964, at *3 (W.D.N.Y. July 11, 2018) (internal quotation marks and citation omitted). But epilepsy is no minor impairment, and the fact that seizures can occur without warning or measurable neurologic deficits makes evaluating the severity of seizure disorders beyond the ken of a layman like the ALJ. *See Damona G. v. Comm'r of Soc. Sec.*,

2021 WL 1086467, at *5 (W.D.N.Y. Mar. 22, 2021) ("Seizure disorder is a complex neurological condition with many possible triggers that does not lend itself to lay interpretation.").

So while the record upon which the ALJ relied diagnosed Jominique's epileptic impairments and suggested treatment accordingly, it contained no evidence whatsoever about Jominique's functional capabilities in light of those impairments, and the ALJ was not entitled to "make [that] connection himself." *Kain v. Colvin*, 2017 WL 2059806, at *3 (W.D.N.Y. May 15, 2017); *see Guillen v. Berryhill*, 697 F. App'x 107, 109 (2d Cir. 2017) (summary order) (remanding where "[t]he medical records discuss [a claimant's] illnesses and suggest treatment for them, but offer no insight into how her impairments affect or do not affect her ability to work"); *Timothy S. v. Comm'r of Soc. Sec.*, 2021 WL 661392, at *3 (W.D.N.Y. Feb. 18, 2021) (remanding where the ALJ relied only on treatment notes that did "not include any functional assessment of [a claimant's] functional abilities").

Finally, the Commissioner is correct that Jominique appears to have been non-compliant with recommended treatment and failed to return the "functioning questionnaire" to state agency consultants. Docket Item 12-1 at 12–13. And that may very well weigh against a finding of disability. But those facts alone do not make an incomplete medical record complete. And "[w]here there are gaps in the administrative record"—especially gaps as wide and significant as those here—remand is appropriate "for further development of the evidence." *Rosa v. Callahan*, 168 F.3d 72, 82–83 (2d Cir. 1999) (internal quotation marks and citation omitted); *see* 20 C.F.R. §§

404.1519a(b), 416.919a(b) ("We may purchase a consultative examination . . . when the evidence as a whole is insufficient to allow us to make a determination on [a] claim.").[5]

## CONCLUSION

In sum, because the record was insufficient to determine Jominique's functional capacity, the RFC was not supported by substantial evidence and remand is required. *See Guillen*, 697 F. App'x at 109. The Commissioner's motion for judgment on the pleadings, Docket Item 12, therefore is DENIED, and Jominique's motion for judgment on the pleadings, Docket Item 6, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:   December 1, 2025
         Buffalo, New York

*Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

---

[5] The Court "will not reach [any] remaining issues raised by [Jominique] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see Beers v. Comm'r of Soc. Sec.*, 449 F. Supp. 3d 96, 103–04 (W.D.N.Y. 2020).